(A. R. D. 38)

UNITED STATES *v.* {A. U. MORSE & Co.
{HOYT, SHEPSTON & SCIARONI

Entry No. 193.

First Division, Appellate Term

(Decided March 11, 1954)

*Warren E. Burger,* Assistant Attorney General (*John J. Antus,* trial attorney), for the appellant.

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the appellees.

Before OLIVER, JOHNSON, and FORD, Judges

OLIVER, Chief Judge: This case is before us as an application for review of the decision in *A. U. Morse & Co.* and *Hoyt, Shepston & Sciaroni* v. *United States,* 28 Cust. Ct. 684, Reap. Dec. 8131, wherein the trial judge held export value (section 402 (d) of the Tariff Act of 1930) to be the proper basis for appraisement of certain black sheathing felt, and found such statutory value to be £6/10/6 per crate, less nondutiable charges. The conclusion sustained the importer's contention.

The merchandise was exported in June 1945 from Belfast, Ireland, and was packed in crates containing 10 rolls of sheathing felt 25 yards long by 32 inches wide. On entry, certain nondutiable charges were deducted, but, because of advances by the appraiser in a pending case, the importer added an amount to make entry at 4½ pence per linear yard, plus 50 per centum, less 2½ per centum, plus 9 shillings per crate for packing, which entered value represented foreign value.

The crux of the case is whether the foreign market was controlled at the time of exportation of the present merchandise. The trial judge held that it was, thereby eliminating statutory foreign value (section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938) as a basis for appraisement of the sheathing felt in question.

·

The record consists of an affidavit (exhibit 1), executed by the secretary of Robert McCalmont & Sons, Ltd., of Belfast, Ireland, the manufacturer of the present merchandise, oral testimony of the United States examiner of sheathing felt at the port of San Francisco, where the merchandise in question was entered, and six reports of a Treasury representative, (exhibits 2, 4, and 5, and collective exhibits 3, 6, and 7).

The United States examiner, whose duties since 1946 included the examination of black sheathing felt imported from England and Northern Ireland, testified that all sheathing felt, irrespective of the manufacturer thereof, was always substantially the same, and that it was "impossible to tell any difference by handling, smell, tearing them apart to see the texture, or any other simple tests of that nature." All importations weighed the same, and the prices thereof were approximately the same for the same period. The product "of one manufacturer could not be distinguished from that of another." The witness stated that he made his advisory return on the basis of the said Treasury representative's reports.

In the affidavit of the secretary of the foreign manufacturer of the sheathing felt in question, the witness states that he is in complete charge of all sales of sheathing felt for his company; that he is fully familiar with all prices, quantities sold, and restrictions on sales; that he knows the basis of sales of all other felt manufacturers; and that since October 8, 1937, "all felt manufacturers have made their sales upon the basis of agreed prices charged when selling felt for home consumption." The affiant further testifies that "in making sales for home consumption, the manufacturers do not freely offer the merchandise to all purchasers at a single price but at various prices dependent upon the business of the purchaser," and that "manufacturers require these purchasers to agree that they will resell only at certain fixed prices." On that phase of the foreign market, the affidavit reads as follows:

In making such sales, the manufacturers required that Listed Factors could sell only to ironmongers, builders and users, and only at the above listed price applicable to such trade, that Asphalt Factors could sell only to asphalters and only at the asphalters' listed price, and that galvanizers factors could likewise sell only to galvanizers direct and at the price listed above for such buyers. Also, these factors were required to furnish the manufacturers with the names of their buyers so that performance of their agreement could be observed. Furthermore, the manufacturers then refrain from offering this merchandise to the factors, purchasers and also agree to refer to the factors any enquiries they may receive from these clients and from other people that are likely to be buyers from them.

The Treasury representative's reports lend support to the testimony offered on behalf of the importer through the affidavit, exhibit 1, *supra*. Three of those reports (exhibit 4 and collective exhibits 3 and 6) contain positive statements that the plussages on the basic price per

yard, and the discounts allowed therefrom, are determined solely by the status of the purchaser. Furthermore, the foreign manufacturer not only fixed prices, dependent upon the nature of the business of the purchaser, but also controlled the price on resale, particularly with reference to transactions between galvanizers' factors and galvanizers (exhibit 4 and collective exhibit 7). The trial judge very aptly described the condition as follows:

* * * That is to say, the price is varied according to the sort of business in which the purchaser engages and that these purchasers were expected to resell only at the prices the second purchaser would have been able to buy from the manufacturer, and it was pointed out that builders and ironmongers rarely purchased direct from the manufacturer, although such manufacturer would not refrain from so selling. The Treasury representative in each of the reports stated that it is understood that the galvanizer factor was to resell to the galvanizer at the same price that the factor pays the manufacturer except that he retains the 3¾ per centum discount as his profit. He also advanced the opinion that "the galvanizer has always the privilege or option of purchasing direct from the manufacturer instead of passing thru the intermediary of a factor."

A market has been held to be controlled "when restrictions are imposed on the resale, free use, dominion over the merchandise, or confining of sales to selected purchasers," *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262. A controlled market was held to exist under conditions whereby manufacturers of bottle caps sold to dealers through an agreement which included a provision that the latter would not resell the merchandise below prices specified in the manufacturer's offer, *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115.

Under the cited authorities, the foreign market at the time of exportation of the sheathing felt in question, as disclosed by the evidence adduced by both parties, hereinabove outlined, was a controlled market for such and similar merchandise. The condition removes from consideration as a basis for appraisement of the present merchandise foreign value, as defined in section 402 (c), as amended, *supra*.

On the matter of export value, section 402 (d), *supra*, the record before us (the affidavit coupled with the Treasury representative's reports) is sufficient to show that at the time of the exportation of the sheathing felt in question, such or similar merchandise was freely offered for exportation to the United States to all purchasers in the ordinary course of trade in the principal market of Belfast, Ireland, in the usual wholesale quantities of "100 crates or more" at a price of £6/10/6 per crate of 10 rolls of sheathing felt 25 yards long by 32 inches wide, less nondutiable charges, as invoiced.

Accordingly, we find as matter of fact:

(1)   That the merchandise in question consists of black sheathing felt that was exported in June 1945 from Belfast, Ireland.

(2)   That at the time of exportation of the merchandise in question, such or similar merchandise was not freely offered for sale to all purchasers in the country of exportation for home consumption.

(3)   That merchandise, such as or similar to the black sheathing felt in question, was freely offered for sale to all purchasers in the principal market of Belfast, Ireland, in the usual wholesale quantities of 100 crates or more, and in the ordinary course of trade, for exportation to the United States.

We hold as matter of law:

(1)   That there was no foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, as modified, *supra*, for black sheathing felt, such as or similar to the merchandise in question.

(2)   That the proper basis for appraisement of the black sheathing felt in question is export value, section 402 (d), *supra*, and that such statutory value is £6/10/6 per crate of 10 rolls of sheathing felt 25 yards long by 32 inches wide, less nondutiable charges, as invoiced.

The judgment of the trial judge is affirmed.